UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL W. KIRKHAM,

    Plaintiff,

v.

PRUDENTIAL INSURANCE CO. OF
AMERICA, et al.,

    Defendants.

Case No. 1:09-cv-733

Bertelsman, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Michael W. Kirkham filed a complaint claiming wrongful termination of long-term disability benefits and seeking reinstatement of benefits pursuant to the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132. Defendants have filed a Motion for Judgment arguing Plaintiff's claim for long-term disability benefits fail as a matter of law. (Doc. 30). Plaintiff has filed a response (Doc. 45) and his own Motion for Judgment.[1] (Doc. 47). Pursuant to local practice, the pending motions have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636(b).

**I. Background**

**A. The Disability Benefits Plan**

Plaintiff Michael W. Kirkham was employed by SAIA Motor Freight Line, Inc. ("SAIA") as a Line-Haul Driver. (Doc. 20-1, Administrative Record, at 4). SAIA sponsored a disability benefits plan that was insured by Prudential Insurance Company of America ("Prudential") to cover Plaintiff and other full-time hourly employees. (Doc.

---

[1] Although Plaintiff requests oral argument in his Memorandum in Opposition to Defendant's Motion for Judgment (Doc. 45), the undersigned has determined that oral argument is unnecessary.

20-6 at 2). The Plan entitles a participant to long-term disability ("LTD") benefits upon Prudential's determination that a participant is unable to perform his or her work duties based upon an objective review of the occupation. (Doc. 20-7 at 14). The participant must be continuously disabled for a 90-day elimination period to be eligible for benefit payments. (*Id.* at 16). Following 24 months of payment, Prudential will determine that a participant is disabled due to the same sickness or injury based on a number of factors including the participant's ability to perform activities of daily living. (*Id.* at 14). The Plan defines key terms such as "material and substantial duties" and "regular occupation." (*Id.*). The Plan provides a participant a percentage of his or her monthly earnings to be offset by other deductible sources of income such as Social Security disability payments. (*Id.* at 17, 19).

### B. Plaintiff's Medical History and Administrative Record

On February 25, 2008, Plaintiff was diagnosed with chondromalacia patella, a condition affecting his left knee. (Doc. 20 at 115, 118). Plaintiff subsequently underwent arthroscopic surgery on April 18, 2008. (*Id.* at 115-117). Plaintiff saw his surgeon, Dr. Henry Kim, for a number of post-surgical follow-up visits. (*Id.* at 84, 86). During those visits, Dr. Kim recommended that Plaintiff avoid high-impact activities – specifically squatting, kneeling, and unnecessary use of stairs – and noted that Plaintiff's post-surgical pain and difficulties were not uncommon. (*Id.* at 87, 85).

On May 17, 2008, Plaintiff's application for disability benefits was approved for a short period, pending additional review. On October 15, 2008, Dr. Kim declared Plaintiff had reached his maximum medical improvement.[2] (Doc. 20 at 12). Dr. Kim also made

---

[2] Medical records reflect that Plaintiff is morbidly obese at 340 pounds. Dr. Kim noted that Plaintiff's knee problems would persist without weight loss (Doc. 20 at 12, 43) and there could possibly even be "further increased issues with his left knee" unless Plaintiff loses "a substantial amount of weight." (*Id.* at 40). This

2

prior restrictions permanent: no repetitive squatting/kneeling, no repetitive climbing of ladders/structures (*Id.*).³  Dr. Kim defined "repetitive" as 10-20 times per shift. (*Id.*). On November 22, 2008, after completing its review of the documentation submitted by Plaintiff, Prudential terminated Plaintiff's benefits (*Id.* at 80).

On April 30, 2009, Plaintiff appealed the termination of his benefits. (Doc. 20 at 30).  On June 1, 2009, Prudential rejected Plaintiff's appeal, affirming the termination of benefits. (Doc. 20-1 at 70).  On September 23, 2009, Defendant denied Plaintiff's second appeal of the termination of his benefits (*Id.* at 62).

**C.  Benefit Decisions**

Following the termination of benefits, Prudential reviewed Plaintiff's case on three different occasions, each time concluding that termination of LTD benefits was warranted on grounds that Plaintiff was able to perform his "regular occupation."

First, a Prudential Vocational Rehabilitation Specialist reviewed Plaintiff's file on July 1, 2008.  The Defendant's specialist used the Dictionary of Occupational Titles ("DOT") to determine the normally performed occupational requirements of a truck driver, consistent with the Plan. (Doc. 20-1 at 5).  The report related the DOT's provisions regarding the physical nature of the essential functions of a truck driver (Docs. 20-1 at 6; 20-3 at 10) and noted that the physical demands were classified in the "medium" category. (Docs. 20-1 at 6; 20-3 at 11).  The report described both occasional physical work requirements and "repetitive short cycle work." (Docs. 20-1 at 7; 20-3 at 11).  Prudential initially terminated Plaintiff's LTD benefits based upon this first

---

was corroborated during an independent review by Dr. Lele. (*Id.* at 14).  Plaintiff did not attend physical therapy for his knee because he was told not do anything strenuous (Doc. 20-1 at 3).

³As Defendant points out, Dr. Kim imposed no restrictions on Plaintiff's ability to bend or twist his body.

vocational expert's analysis, concluding that Plaintiff maintained the functional capacity sufficient to perform the duties of his regular occupation as a truck driver, insofar as those duties were determined by the DOT description (Doc. 20-1 at 80).

Plaintiff's file was reviewed a second time by another Vocational Rehabilitation Specialist on May 14, 2009, after Plaintiff appealed the termination of his benefits. (Doc. 20-1 at 31; Doc. 20 at 30). The second specialist examined the role of bending, kneeling, and squatting in Plaintiff's regular occupation as it was normally performed. (Doc. 20-1 at 31). Consistent with the first analysis, the second specialist found that DOT categorized squatting, kneeling, and climbing as only "occasional" occupational requirements of a truck driver. (*Id.*; 20-3 at 11). The report cited the DOT definition for occasional activity (Doc. 20-1 at 31) and the time devoted to these activities under O*NET. (*Id.*; 20-4 at 17). The report highlighted that neither DOT nor O*NET classified the specified activities as being required on a frequent basis (Doc. 20-1 at 31), but rather, described the tasks only as "occasional" duties. (*Id.*; 20-3 at 11; 20-4 at 17). Therefore, Prudential affirmed the termination of Plaintiff's benefits. (Doc. 20-1 at 70).

On September 14, 2009, Plaintiff's file was submitted for a third Medical Record File Review to a board certified orthopedic surgeon, an independent reviewer. (Doc. 20 at 8). Dr. Shiriang Lele examined whether Plaintiff was functionally impaired, the duration and treatment of any applicable impairment, and Plaintiff's ability to perform various activities. (*Id.* at 13-15). Dr. Lele determined that Plaintiff was functionally impaired as to his left knee, affirming Dr. Kim's permanent restrictions. (Doc. 20 at 14, 15). However, the report noted that Plaintiff's use of his right knee is "good" and "symptom free" such that Plaintiff may be able to kneel or squat using that knee. Dr.

4

Lele also noted that Plaintiff was not restricted from sitting, pushing/pulling, or other activities utilizing his hands. (*Id.*). Prudential subsequently denied Plaintiff's second appeal of the denial of LTD benefits (Doc. 20-1 at 62). This suit followed.

## II. Analysis

### A. Standard of Review

In adjudicating an ERISA action, the Sixth Circuit has directed the district court to use the following steps: (1) the district court should conduct a de novo review in consideration of the action's merits based solely upon the administrative record; the district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator; (2) the district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision and any prehearing discovery at the district court level should be limited to such procedural challenges; (3) the summary judgment procedures set forth in Rule 56 are inappropriate for ERISA actions and thus should not be utilized in their disposition. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619-620 (6th Cir. 1998).

Further, pursuant to *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003), a court must determine whether an ERISA plan gives the administrator authority to determine eligibility for benefits or to construe the plan's terms. *Id.* (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989)). When an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, as the Plan at issue in this case does, the district court

5

must review the plan administrator's decision under the arbitrary-or-capricious standard. *Id.*

An outcome is not arbitrary or capricious where the evidence supports a reasoned explanation for that particular outcome. *See Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). Under this standard, the administrator's decision is to be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (*quoting Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd*, 128 S. Ct. 2343 (2008). While arbitrary and capricious review is deferential, it "is no mere formality [,]" and the court must consider "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Glenn*, 461 F.3d at 666. Though a plan administrator may be vested with discretion, the court does not review the administrator's decision merely to "rubber stamp [the] decision." (*Id.*).

In this case, the parties agree that this Court's review is under the arbitrary and capricious standard. (Docs. 30 at 8, 45 at 21). Defendants' Motion for Judgment should be granted – and Plaintiff's cross-motion denied – because the Defendants have offered a reasoned explanation for the termination of Plaintiff's benefits based upon the evidence.

### B. Proof of Medical Improvement

Relying on *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499 (6th Cir. 2009), Plaintiff first argues that Prudential must present evidence that Plaintiff's condition improved in order to justify the termination of LTD benefits once awarded. (Doc. 45 at

6

21). However, *Kramer* is clearly distinguishable from the present case and does not stand for the broad rule that Plaintiff proposes.

In *Kramer*, the employer terminated the plaintiff's long-term disability benefits after five years, not a few months. *Id.* at 508. Moreover, the court noted there was neither an explanation given for the termination of benefits nor any medical evidence that plaintiff's condition had improved. *Id.* at 507. The court reasoned that where the district court determined the evidence established a plaintiff's claims for long-term disability benefits under one insurance policy – an unchallenged decision – an administrator could not deny benefits under a second insurance policy of "equivalent terms." *Id.* Further, plaintiff's professional colleagues and more than twelve treating physicians agreed the plaintiff "was incapable of carrying out her regular duties" and the record even demonstrated plaintiff's condition actually had worsened over the five years she received insurance benefits. *Id.* at 506-507.

In this case, there is only one insurance policy at issue, unlike *Kramer*. In addition, the record here does not contain overwhelming expert support in favor of Plaintiff. Prudential reviewed reports from Plaintiff's doctor, two vocational rehabilitation specialists, and an independent physician consultant when Prudential decided to terminate the LTD benefits and twice affirmed the termination of the benefits. The initial termination of benefits followed within months of Prudential acquiring all relevant information - and just a month after Plaintiff reached maximum medical improvement - not years after a record was compiled and benefits had been granted. (Doc. 20-1 at 98, 29). Further, there is no evidence that Plaintiff's condition has seriously deteriorated as was observed in *Kramer*. Accordingly, the relevant factors that led the *Kramer* court to

comment on the lack of evidence of improvement are irrelevant to this case. Therefore, Defendants need not present strong evidence that Plaintiff's condition has improved in order to show that the termination of Plaintiff's benefits was neither arbitrary nor capricious.

### C. Defining Plaintiff's "Regular Occupation"

Plaintiff's primary argument concerns Prudential's use of the DOT and similar job descriptions in order to determine whether he could perform his "regular occupation," rather than the more strenuous job duties that Plaintiff argues were required to perform his occupation as a line haul driver for SAIA. Regardless of which definition of "regular occupation" is applied, Plaintiff additionally argues that Prudential erred in determining that Plaintiff could perform his regular occupation despite his restrictions on squatting, kneeling, and climbing.

Under ERISA, a fiduciary must discharge his duties under a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D); *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S.Ct. 865, 875 (2009) (administrator fulfilled statutory duty under ERISA by paying benefits in accordance with plan documents); *Kmatz v. Metro. Life Ins. Co.*, 232 Fed. Appx. 451, 455 (6th Cir. 2007); *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir. 1997) (ERISA provides a "clear mandate" that a plan administrator follow the plan documents).

Under the Plan at issue, Prudential must determine whether a person claiming benefits is "unable to perform the material and substantial duties of the participant's regular occupation due to sickness or injury." (Doc. 20-7 at 14). The Plan defines

8

"regular occupation" to be "the occupation [the participant is] routinely performing when [the participant's] disability begins." (*Id.*). The Plan further directs that the participant's occupation is to be examined "as it is normally performed instead of how work tasks are performed for a specific employer or at a specific location." (*Id.*). Thus, the Plan requires Prudential to examine Plaintiff's regular occupation based on how it is normally performed, not based on how it is performed for Plaintiff's particular employer, SAIA. To this effect, Prudential utilized DOT and O*NET. (Docs. 20-1 at 3; 20-4 at 17).

### 1. Use of DOT or Similar Job Descriptions Permissible

Plaintiff argues that Prudential's reliance on DOT and O*NET job definitions was in error for two reasons. First, Plaintiff argues that Defendants' reliance on such resources ignored the work requirements specified by Plaintiff's employer. Second, Plaintiff suggests that Prudential misconstrued the DOT and O*NET definitions by using "isolated quotes from internet websites." (Doc. 45 at 24). Neither of Plaintiff's arguments is persuasive.

First, the definition of "regular occupation" in the Plan explicitly directs Prudential to review Plaintiff's occupation "as it is normally performed instead of how work tasks are performed for a specific employer or at a specific location." Thus, while it was appropriate to review Plaintiff's job title and job description at SAIA to determine which DOT occupational listing was most applicable, Prudential had no duty to examine (and in fact was prohibited from examining) Plaintiff's "regular occupation" solely in the context of his specific employer. (Doc. 20-7 at 14); *See Metropolitan Life Ins. Co.*, 119 F.3d at 420 (ERISA provides a "clear mandate" that a plan administrator follow the plan documents).

In this case, Plaintiff does not dispute that his position as a line haul driver for SAIA was equivalent to the DOT occupation of "truck driver, heavy" or "over-the-road truck driver." (Doc. 45 at 20 n. 19). Controlling Sixth Circuit case law holds that it is not arbitrary or capricious for a plan administrator to use occupational descriptions contained in the DOT when assessing a claimant's ability to perform his or her regular occupation, even though the plaintiff's actual work differs from the DOT. *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006). Accordingly, it was reasonable for Prudential to use the DOT and O*NET to establish the duties of Plaintiff's regular occupation as it is normally performed.

The only time when the use of the DOT to define a "regular occupation" can amount to an arbitrary and capricious decision is when a plaintiff offers evidence that the job he was performing differs significantly from the DOT description - most often in cases where the administrator uses an analogous job title that does not include the same exertional or lifting requirements. *See, e.g., Gilchrest v. Unum Life Ins. Co. Of America*, 255 Fed. App'x 38, 43-44 (6th Cir. 2007)(disconnect between insurer's use of analogous job description under "light" exertional level and the "medium" lifting requirements plaintiff was routinely performing made reliance on DOT description arbitrary and capricious); *see also Thomas v. Brunswick Corp.,* 2009 WL 274493 (E.D. Ky. Jan. 30, 2009)(decision arbitrary and capricious where Prudential incorrectly used "light" DOT classification despite admitting plaintiff's occupation required "medium" exertion); *Bowers v. Hartford*, 2010 WL 1963412 (S.D. Ohio May 17, 2010)(finding decision to be arbitrary and capricious in part due to use of generic "administrative

assistant" DOT occupation without regard to evidence that plaintiff had heavier lifting requirements).

Plaintiff's evidence does not bring this case within the exception to the rule that an administrator may rely on DOT or similar resources to define a claimant's "regular occupation." Prudential reviewed SAIA's work requirements for the position and found them to be generally consistent with the DOT listing for "truck driver, heavy." In fact, Plaintiff freely admits that "[f]or purposes of this proceeding, the line haul driver job at SAIA is equivalent to the Heavy Truck Driver job description in the DOT." (Doc. 45 at 13 n.12). Plaintiff argues only that Prudential should have considered a portion of SAIA's driver description that states that a driver must be able to get in and out of the vehicle's cab "as many as 40 times a day or more," (Doc. 20 at 133).[4] The same description also states that SAIA drivers are expected to spend "90 to 95% of on-duty time in the truck." (*Id.* at 135).

The fact that a plaintiff's particular job duties do not align in each and every respect with an otherwise analogous DOT description of "regular occupation" will not render reliance on the DOT to be arbitrary and capricious. *See Gilchrest,* 2006 WL 1836057, at \*6; *Hester v. Union Cent. Life Ins. Co.*, 2006 WL 2927252, at \*4 (S.D. Ohio Oct. 11, 2006)(administrator's decision is not arbitrary and capricious despite discrepancies between DOT description and employer description of occupation). Plaintiff's own "expert," an experienced truck driver, agreed that the DOT definition of a "heavy truck driver" was an "accurate, general description of what a driver must do," across the truck driving industry. (Doc. 20 at 30). Plaintiff's expert did not argue that

---

[4] Plaintiff's expert's "professional statement" suggests that the typical truck driver is required to get in and out of his cab far fewer times, referencing an average of four driver stops during the course of an 11-hour long-haul, with "several additional stops" for shorter hauls. (Doc. 20 at 31).

Plaintiff is something other than a truck driver, but rather, that *additional* "bending and stooping" duties beyond those represented in the DOT have become "routinely and normally required" of all truck drivers. (Doc. 20 at 30-32). However, this Court need not accept Plaintiff's competing job description based on SAIA's work requirements or the opinion of an independent truck driver (Doc. 20 at 129-135, 30-32). A plan administrator's decision to deny benefits is not arbitrary or capricious where the plan administrator followed one view -the DOT description previously held to be reasonable by the Sixth Circuit -rather than an opposing view. *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161,169 (6th ir. 2003); *see also Brown v. Sun Life Assur. Co.*, 2009 WL 174906, at *9 (E.D. Mich. Jan. 26, 2009)(upholding use of DOT job description even though employer's description contained more physical qualifications).

Plaintiff's second condemnation of the use of DOT and O*NET job descriptions - that Prudential selected "isolated quotes from internet websites" - does not withstand close scrutiny. A comparison of DOT descriptions with Defendants' analysis reveals no significant discrepancies. Rather, Plaintiff's own fleeting citation to an O*NET internet resource itself pulls isolated adjectives out of context to imply that bending and stooping are more frequently required of truck drivers than listed in Defendant's resources.

Prudential has not misquoted the DOT description. A truck driver's essential functions of a physical nature are listed under DOT Code 905.663-013. (Docs. 20-1 at 6; 20-3 at 10). In addition to the obvious task of driving the truck, essential functions include: (1) loading and unloading truck; (2) inspecting truck equipment and supplies including tires, lights, brakes, gas, oil, and water; (3) performing emergency roadside repairs, including tire changes, installing light bulbs, tire chains and spark plugs; and (4)

positioning blocks and tie around items to secure cargo for transit. (*Id.*). The physical demands for a truck driver are classified in the medium exertional category, requiring occasional lifting of up to 50 pounds and frequent lifting of up to ten pounds. (Docs. 20-1 at 6; 20-3 at 11). Based upon the specified job duties, a truck driver "may" "occasionally" be required to stoop and crouch as well as to perform "repetitive or short cycle work." (Docs. 20-1 at 7; 20-3 at 11). Prudential's interpretation of "repetitive or short cycle work" was also reasonable, insofar as Prudential understood the phrase to mean "performing a few routine and uninvolved tasks over and over again according to set procedures, sequence or pace with little opportunity for diversion or interruption." (Docs. 20-1 at 31; 20-3 at 12). Short cycle denotes work that starts and finishes in a brief period of time." (*Id.*).

As stated, the DOT categorizes squatting, kneeling, and climbing as "occasional" occupational requirements that a driver "may" be required to perform. (Doc. 20-3 at 11). In fact, this does not differ from SAIA's own description of its truck driver positions, which require the ability to perform "occasional bending, twisting, climbing, squatting, stooping, and balancing." (Doc. 20 at 133). The DOT defines the term "occasional" to be an activity performed up to 33 1/3% of an eight-hour workday. (Doc. 20-1 at 31). O*NET lists a truck driver's activities to include kneeling, stooping and crouching for 27% of the driver's time and climbing 15% of the driver's time. (*Id.*; 20-4 at 17). Thus, neither DOT nor O*NET (nor plaintiff's own employer) classify the tasks of kneeling, stooping, crouching, bending, squatting, and climbing as required on a "frequent" basis. (Doc. 20-1 at 31). Rather, these were occasional duties. (*Id.*; 20-3 at 11; 20-4 at 17).

## 2. Application of Limitations to Job Description

Last, Plaintiff argues that the permanent restrictions determined by his physician and agreed with by the reviewing orthopedic consultant prohibit him from "repetitive" squatting and kneeling, as well as from "unnecessary stair use." (Doc. 20 at 43). Consulting physician Dr. Lele agreed with the limitations found by Plaintiff's treating physician, except for noting that Plaintiff was still able to kneel and squat on his undamaged right knee (Doc. 48 at 10).

Defendants concede that Plaintiff is restricted from "repetitive" bending, kneeling, squatting, and climbing activities. However, after reviewing Plaintiff's records, Prudential determined that the functional limitation on "repetitive" movements did not prohibit Plaintiff from engaging in "occasional" duties under DOT guidelines. Because the relevant DOT description requires only "occasional" participation in the types of activities that relate to Plaintiff's functional limitations, (Doc. 30 at 10), Prudential determined Plaintiff was not precluded from performing the functions of a truck driver (*Id.*).

Plaintiff's argument includes a reasonable and medically supported interpretation of his restrictions - one that frankly, this court might agree with were this Court making its own disability determination. Nevertheless, Plaintiff's argument falls short of what is required to show that Prudential's decision was arbitrary and capricious. Prudential's determination, after review of the treating and consulting physicians' records that Plaintiff's limitations did not preclude "occasional" activities consistent with the DOT and O*NET descriptions of truck driver duties, is also reasonable. The adoption of one point

14

of view is not arbitrary or capricious simply because Plaintiff can argue an opposing view. *See McDonald*, 347 F.3d at 169.

Nor was it arbitrary and capricious for Prudential to rely upon its vocational consultants and other evidence in the record that did not entirely agree with the most restrictive interpretation of the limitations articulated by Dr. Kim. ERISA does not require that Prudential give deference to the opinion of Plaintiff's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S. Ct. 1965 (2003). ERISA also does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. *Id.* Prudential's decision that Plaintiff could perform occasional squatting, kneeling and climbing found support in both the review by the vocational experts, and in Dr. Lele's report that Plaintiff could squat and kneel at least to some extent on his right knee without impacting his left knee. (Doc. 20 at 14). Therefore, it was reasonable for Defendants to conclude that Plaintiff, with his medical restrictions, was able to perform the material and substantial duties of his regular occupation of heavy truck driver, even if he could no longer perform his position at SAIA.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED** that:

1. The Defendants' Motion for Judgment on the Administrative Record (Doc. 30) be **GRANTED;**

2. The Plaintiff's Cross-Motion for Judgment on the Administrative Record (Doc. 47) be **DENIED;** and that

3. This case be dismissed with prejudice from the active docket of this Court.

                                                 */s Stephanie K. Bowman*
                                                 Stephanie K. Bowman
                                                 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL W. KIRKHAM,

    Plaintiff,

Vs.

PRUDENTIAL INSURANCE CO. OF
AMERICA, et al.,

    Defendants.

Case No. 1:09-cv-733

Bertelsman, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).